STATE FARM MUTUAL AUTO-
MOBILE INSURANCE CO.,
Plaintiff,

Hamilton Mutual Insurance
Co., Plaintiff–Appellee,

v.

Christopher R. WILSON;  Nancy
M. Wilson;  Garry Wilson;
Defendants,

Donald Pegago, III;  Donald Pegago;
Donna Pegago;  Defendants–
Appellants.

No. 01–5470.

United States Court of Appeals,
Sixth Circuit.

Dec. 20, 2002.

Before KEITH, KENNEDY, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

The district court entered a memorandum opinion and order denying Defendant–Appellant Donald Pegago, III, coverage under his parents' insurance policy with Plaintiff–Appellee Hamilton Mutual Insurance Company because of the policy's entitlement exclusion. Pegago argues that the exclusion is ambiguous and therefore should be interpreted to allow him coverage. For the reasons set forth below, we REVERSE the judgment of the district court and REMAND with instructions for the district court to enter judgment in favor of Pegago.

## I

On Friday, August 22, 1997, Pegago, Christopher Wilson, and Timothy Downs were involved in an automobile accident. The boys had planned an outing at school on Thursday and finalized their plans on the telephone Thursday evening. After midnight, Wilson sneaked out of his house, went to his grandfather's house next door, and took his grandfather's truck without permission by using a duplicate key that he had secretly made.

Wilson picked up Pegago, who had also sneaked out, and they headed to Cox Elementary School. Pegago cut down a sapling with a knife, and Wilson drove on the grass. After leaving the school, the pair picked up Downs at his home. They stopped for gas, so that the gas level would not reveal that Wilson had taken his grandfather's truck. Then the three boys went to the home of Downs's girlfriend, where Downs spoke to his girlfriend until almost 3:00 a.m.

By this time, Pegago was anxious to return home because his uncle usually arrived home around 3:00 a.m. In order to get Pegago home before his uncle, Wilson

began to speed. Pegago later estimated that they were traveling at a rate of 80–90 miles per hour, and Wilson estimated 135 miles per hour. A police officer saw the speeding truck and began to give chase. At a sharp turn in the road, Wilson lost control of the vehicle. The truck flipped six times and Pegago was thrown from the cab.

Pegago never thought that Wilson had permission to use the truck. He knew that Wilson was not legally entitled to drive because Wilson only had a learner's permit. Pegago also knew that his parents would not permit him to leave the house late at night or to ride with Wilson. In fact, Pegago had been punished for sharing a joy ride with Wilson earlier that year.

Pegago's parents have an insurance policy with Hamilton Mutual Insurance Company of Cincinnati ("Hamilton Mutual") that provides uninsured and underinsured motorists coverage. The policy states that it will "pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured or underinsured motor vehicle' because of 'bodily injury.'" Joint Appendix ("J.A.") at 382. The policy defines an "insured" as "[y]ou or any 'family member,'" J.A. at 383, and defines "'[f]amily member' [as] a person related to you by blood, marriage or adoption who is a resident of your household." J.A. at 379. The policy also provides a list of exclusions, including an entitlement exclusion:

> We do not provide Uninsured of [sic] Underinsured Motorists Coverage for "bodily injury" sustained by any person:
> * * *
> 5. Using a vehicle without a reasonable belief that that person is entitled to do so.

J.A. at 383.

Pegago filed a personal injury action against Wilson in Kentucky state court.

While this action was pending, Hamilton Mutual filed a complaint for declaratory relief in the United States District Court for the Western District of Kentucky. Hamilton Mutual sought a declaration that it owed neither underinsured nor uninsured motorists coverage for Pegago's injuries. On February 27, 2001, the district court ordered that Hamilton Mutual owed neither underinsured nor uninsured motorists coverage for Pegago's injuries. The district court held that Hamilton Mutual was not liable to Pegago for damages that might arise out of his state-law claims because he fell under the policy's entitlement exclusion. J.A. at 19 (reasoning that Pegago was using the vehicle without a reasonable belief of entitlement and would have been excluded from coverage "[b]y any definition of entitlement"). Pegago timely filed this appeal.

## II

In cases such as this falling under our diversity jurisdiction, we apply the same law, including choice of law, that would be applied in the state courts of the forum state. *Kipin Indus., Inc. v. Van Deilen Int'l, Inc.,* 182 F.3d 490, 493 (6th Cir.1999). Because the parties do not dispute that Kentucky law applies in this case, we apply Kentucky law for the purpose of this appeal.

In light of the parties' stipulation that there are no issues of material fact, the only issue on appeal is whether the district court properly interpreted the insurance policy. We review de novo a district court's interpretation of a contract, such as an insurance policy. *Parameter Driven Software, Inc. v. Mass. Bay Ins. Co.,* 25 F.3d 332, 336 (6th Cir.1994). Therefore, we need to determine whether Pegago is precluded from coverage under his parents' insurance policy in light of the policy's entitlement exclusion. In other words, we must determine whether the entitlement exclusion applies to Pegago.

In *State Automobile Mutual Insurance Co. v. Ellis,* 700 S.W.2d 801, 803 (Ky.Ct. App.1985), the Kentucky Court of Appeals held that an identically-worded entitlement exclusion did not apply because the policy's express coverage of family members created an ambiguity. In *Ellis,* the fourteen-year-old daughter of the owner of an insured vehicle took the vehicle without permission, caused a collision, and was sued for property damage and expenses. *Id.* at 802. The insurance company denied coverage because the policy included an exclusion stating that it "did not provide coverage for any person '[u]sing a vehicle without a reasonable belief that that person is entitled to do so.' " *Id.*

Rather than apply the exclusion, the *Ellis* court determined that an ambiguity arises "[w]hen an attempt is made to apply the general exclusion to a family member" who is specifically covered under the policy. *Id.* Although "ordinary words in insurance policies are to be given their ordinary meaning," the court concluded that ordinary meaning could not resolve the ambiguity. *Id.* at 802–03. The court reasoned that, where a policy's ordinary meaning is not clear, "[d]oubts concerning the construction of insurance contracts are to be liberally construed in favor of the insured, and exclusions are to be strictly construed to make insurance effective." *Id.* (citing *Davis v. American States Ins. Co.,* 562 S.W.2d 653, 655 (Ky.Ct.App. 1977)). Therefore, "[i]f an insurance contract allows two reasonable constructions, the one most favorable to the insured prevails." *Id.* (citing *Wolford v. Wolford,* 662 S.W.2d 835, 838 (Ky.1984)). Moreover, "[i]n cases of ambiguity specific clauses in insurance policies control general clauses." *Id.* (citing 2 *Couch on Insurance* 2d § 15:71 (Rev. Ed.1984)). From these

premises, the *Ellis* court concluded that the daughter was covered because she was "specifically included in the coverage of the policy as a 'family member' and ... the general exclusion does not operate to exclude that coverage." *Id.*

Here, Pegago's parents are the insured, and the language of the policy in question specifically covers Pegago. The uninsured and underinsured motorists section of the policy defines "an insured" as "[y]ou or any 'family member.'" J.A. at 383. Under the policy, a "family member" is "a person related to you by blood, marriage or adoption who is a resident of your household." J.A. at 379. This language is identical to that which the Kentucky Court of Appeals found to "specifically afford[ ] coverage" in *Ellis*. 700 S.W.2d at 802. Pegago is a person related by blood to the policyholder and is a resident of the policyholder's household. Therefore, the Pegagos' policy specifically covers Pegago because he meets the definition of "family member."

Moreover, under Kentucky law, this coverage of Pegago under the policy is not excluded by the policy's entitlement exclusion. The language of the exclusion in the Pegagos' policy is also identical to that considered in *Ellis*:

> We do not provide Uninsured of [sic] Underinsured Motorists Coverage for "bodily injury" sustained by any person:
> * * *
> 5. Using a vehicle without a reasonable belief that that person is entitled to do so.

J.A. at 383. The *Ellis* court described this language as a "general exclusion." 700 S.W.2d at 801–802. Under Kentucky law, the general exclusion does not operate to exclude the specific coverage afforded to Pegago as a family member of the policyholder. Therefore, the entitlement exclusion does not apply to Pegago, and he is covered under the policy's uninsured and underinsured motorists provision.

### III

For the above reasons, we REVERSE the district court's decision holding that Hamilton Mutual owed Pegago neither uninsured nor underinsured motorists coverage for damages that may arise out of Pegago's state-law claims against Wilson, and REMAND for the district court to enter judgment in favor of Pegago.